UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | Civil No.12cr0917 AJB |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| COLE JOSEPH DOTSON, | [Doc. No. 8] |
| Defendants. | |

Presently before the court is Defendant Cole Dotson's motion to dismiss the charges based on supremacy clause immunity. The motion is opposed by Deputy District Attorney Wayne Robinson on behalf of the People of the State of California. The Defendant filed a Reply.

A hearing was held on May 24, 2012 at 9 a.m. in Courtroom 12 before Judge Battaglia. Deputy District Attorney Wayne Robinson appeared on behalf of the People of the State of California, and Jeremy Warren, Michael Stone and appeared on behalf of the defendant. Based upon the parties moving papers, the arguments of counsel and for the reasons expressed on the record and set forth below, the Defendant's motion to Dismiss, [Doc. No. 8], is hereby GRANTED.

## *Background*

### *I. Factual Background*

The Defendant, Cole Dotson, is a federal law enforcement officer assigned to the Office of Investigations, Proactive Narcotics Group, in El Centro, California. On December 29, 2009, the

Defendant participated in the undercover surveillance of a suspected methamphetamine trafficker who was crossing the Mexico border into Calexico, California. After the suspect crossed the border into the United States and was identified, the Defendant got into his unmarked law enforcement vehicle and began following the suspect via a parallel route. During this surveillance, there were communication difficulties for the Defendant and his team; radio coverage was intermittent and agents were forced to rely on their cell phones to attempt to maintain communication. The Defendant continued to follow the suspect from a parallel route and when he determined that the suspect was headed north, he changed course in an effort to find a highway that would allow him to continue to follow the suspect. He turned north onto Bowker Road, a long, straight north-south highway. While changing routes the Defendant became separated from his team and the suspect he was following.

It was dark and the Defendant, in an apparent effort to catch up with the suspect and the rest of his team, was traveling rapidly down the highway. At certain times the Defendant was traveling over 100 miles an hour. When Defendant approached the intersection of Bowker and East Heber Road his speed was approximately 80 miles per hour. He failed to stop at the stop sign, and upon entering the intersection he collided with the side of a van. The Defendant was going 78 miles per hour at the time of collision and had not turned on his police siren before entering the intersection. Both vehicles careened into a drainage ditch next to the road. The van flipped over killing three of the occupants and injuring 2 others. None of these facts are disputed in this motion.[1]

*II. Procedure Background*

The grand jury declined to return an indictment on charges of murder and manslaughter. The Imperial County District Attorney's office issued a complaint charging three counts of felony vehicular manslaughter with gross negligence and without malice. After a preliminary hearing, the Defendant filed

---

[1] While plaintiff suggests disputed issues of fact otherwise exist that would warrant denying the motion, the court did not find them material to the disposition of the motion. The Court assumed all facts proffered by the plaintiff to be true, and none changed the outcome. For instance, whether defendant applied the brakes just before the stop sign or not doesn't change the Court's findings that defendant acted necessarily and properly under the exigency of the situation and as part of his duties as a law enforcement officer, and under prevailing authority. While clearly negligent, this Court has determined him immune from criminal prosecution in this case. Therefore, plaintiff's presentation of the evidence supporting a conviction under California law, on these facts, misses the mark. Immunity from prosecution renders that analysis moot.

a notice of removal to this court pursuant to 28 U.S.C. § 1442(a). As grounds for removal, the Defendant asserted the federal defense of federal immunity. The court granted removal pursuant to § 1442(a).

### *Legal Standard*

Under Federal Rule of Criminal Procedure 12(b)(2), a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue. Where the court determines there are not any material disputes of fact, it is free to rule without taking evidence or holding a testimonial hearing. *Idaho v. Horiuchi,* 253 F.3d 359, 374 (9th Cir.) (en banc), vacated as moot, 266 F.3d 979 (9th Cir. 2001). Where there are disputed issues of fact, the court must hold a hearing and make a determination pretrial. *Id.*, citing *West Virginia v. Laing*, 133 F. 887, 891 (4th Cir. 1904) ("Congress certainly intended, in cases of this character, that the judges of the United States should hear the evidence, and without a jury proceed in a summary way to pass upon the federal question involved"). "Federal judges, versed in the subtleties of federal immunity law, are well equipped to make factual findings and legal conclusions." *Idaho v. Horiuchi,* 253 F.3d 359, 376 (9th Cir.) (en banc), vacated as moot, 266 F.3d 979 (9th Cir. 2001).

### *Discussion*

The Defendant filed a motion to dismiss the instant case based upon Supremacy Clause immunity. Arguing such immunity protects federal officers from state court prosecution when the prosecution is based on activities performed in the scope and course of duty where the officers conduct was "necessary and proper." *In re Neagle*, 135 U.S. 1 (1890). When a federal officer seeks to use the Supremacy Clause immunity he must first establish a threshold defense of immunity. *Commonwealth of Kentucky v. Long*, 837 F.2d 727, 857 (6th Cir. 1988). Then the burden shifts to the prosecution to produce evidence "sufficient at least to raise a genuine factual issue whether the federal officer was . . . doing no more than what was necessary and proper for him to do in the performance of his duties." *Id.* "The district court should grant the motion in the absence of an affirmative showing by the state that the facts supporting the immunity claim are in dispute." *City of Jackson v. Jackson*, 235 F.Supp.2d 532, 534 (S.D. Miss. 2002).

**I. Scope of Authority**

Federal agents are protected from state criminal prosecution where the federal agent is acting reasonably within the broad contours of official duty, and without malice. *Idaho v. Horiuchi,* 253 F.3d 359, 381 (9th Cir.) (en banc) (Hawkins, dissenting), vacated as moot, 266 F.3d 979 (9th Cir. 2001). To determine this the court first must look to whether the federal agent's act was done pursuant to the law of the United States and in the line of duty. *Clifton v. Cox*, 549 F .2d 722, 726 (9th Cir. 1977). For example, in *Clifton v. Cox*, a federal agent was part of a task force executing a search on a ranch house. *Id.* at 724. When the agents exited the helicopter that transported them to the house, one of the agents tripped and fell. *Id.* at 724. This caused one of the agents to mistakenly believe his fellow agent had been shot. *Id.* at 724. He kicked down the door of the ranch and chased the fleeing suspect outside where he shot and killed the suspect after he refused to stop. *Id.* at 726. The Ninth Circuit answered the question of whether shooting the suspect was within the agent's authority by pointing out that the agent was a federal agent who was empowered to carry firearms and to execute search warrants under federal law. *Id.* at 728. The court held that "even though his acts may have exceeded his *express* authority, this did not necessarily strip petitioner of his lawful power to act under the scope of authority." *Id.* at 728 (emphasis added).

The Defendant in the present case argues that he was undoubtably on-duty because he was following a suspected methamphetamine trafficker when the accident occurred. *Def.'s Mot. to Dismiss* 15, Doc. No. 8. The Deputy District Attorney does not dispute that the Defendant was on-duty and was in the act of following a suspected drug trafficker when the accident occurred. *People's Resp. To Def.'s Mot. To Dismiss* 6, Doc. No. 12. Running a stop sign without using sirens might not be considered in Defendant's "express" authority. However, in *Clifton*, the Ninth Circuit said that "notwithstanding the questionable legality of a federal officer's actions, courts recognized the general rule that errors of judgement in what one conceives to be his legal duty will not, alone, serve to create criminal responsibility of a federal officer." *Clifton v. Cox*, 549 F.2d 722, 727 (9th Cir. 1977). What the Deputy District Attorney *does* dispute is whether the Defendant's actions were necessary and proper. *People's Resp. to Def.'s Mot. to Dismiss 6,* Doc. No. 12 (emphasis added).

***II. Necessary and Proper***

The necessary and proper standard was first introduced in the *Neagle* case. *In re Neagle*, 135 U.S. 1 (1890). In *Neagle*, Supreme Court justice Field was on a train when he was approached by a man who had previously made death threats against him. *Id.* at 53. After striking Field twice over the head he reached into his pocket in an apparent attempt to pull out a knife. *Id.* at 53. At this point the marshal assigned to protect Field stood and shot the man twice, killing him. *Id.* at 53. It was later discovered that he was not armed. *Id.* at 53. The marshal was charged with murder in the state of California. *Id.* at 3. The United States Supreme Court held that the marshal could not be held guilty under the law of California as long as the he did no more than what was necessary and proper to do. *Id.* at 75.

More recently the Ninth Circuit has elaborated on this standard. For a federal employee to be stripped of the Supremacy Clause immunity it must be shown that the employee employed means which he cannot honestly consider reasonable in discharging his duties or that the act was made out of malice or with criminal intent. *Clifton v. Cox*, 549 F .2d 722, 728 (1977). *Clifton* also holds that "this standard does not require a petitioner to show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be". *Id.* at 728.

The Defendant argues that his conduct was done without criminal intent or malice and was a reasonable good faith attempt to comply with his obligations under the law. *Def.'s Mot. to Dismiss* 15, Doc. No. 12. The Defendant argues that he had a responsibility to provide backup and security to his fellow agents who were pursuing a potentially dangerous drug trafficker and closing in on a location believed to be a key part of the drug trafficking operation. *Id.* The Prosecution argues that the Defendant's actions were not necessary and proper or reasonable. *People's Resp. to Def.'s Mot. to Dismiss* 7, Doc. No. 12. The Prosecution argues that the Defendant's driving was in direct violation of ICE policies and he should have slowed when he realized he was in an area he was not familiar with. *Id.* The Prosecution argues that by not following the ICE driving policies, failing to slow down, and running the stop sign, his actions were unreasonable. *Id.* However, the Prosecution fails to cite any authority in support of his assertion. Furthermore, several federal agents including the Defendant's supervisor reported speeding and driving through stop signs to catch up to surveillance themselves. *Def. 's Reply* 7-8, Doc. No. 13. Several agents further explained that ICE agents are not prohibited from exceeding 100 miles per hour or driving through stop signs. *Id.* They are simply expected to use their own judgment, as

special agents, when making these decisions. *Id.* Additionally, in *Clifton,* it was against regulations to fire at fleeing suspects. *Clifton v. Cox*, 549 F.2d 722, 730 (9th Cir. 1977) (Browning Concurring). Yet the Ninth Circuit found that the agent was reasonable in shooting the unarmed suspect when he ran from the agents. *Clifton v. Cox*, 549 F.2d 722, 730 ( 9th Cir. 1977).

Under the necessary and proper standard, the Defendant only has to show that his act of speeding and running the stop sign in order to catch up to the suspect and his fellow agents was something he reasonably thought was necessary in performance of his duty. *Id.* at 729., citing *In re McShane*, 235 F.Supp. 262, 274 (N.D. Miss. 1964) ("If . . . petitioner shows . . . that he had an honest and reasonable belief that what he did was necessary in the performance of his duty . . . then he is entitled to the relief he seeks."). The Defendant claims he does not remember the actual accident or running the stop sign, but it would not be a leap to assume he thought it reasonably necessary at the time in order to catch up to the suspect and his fellow agents. Neither the Defendant nor the Prosecution argue that what Defendant did was in good judgement, however as the Ninth Circuit set forth in *Clifton* the necessary and proper standard "does not require a petitioner to show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be." *Id.* at 728. As long as the Defendant believed his action was reasonablely necessary in the performance of his duty it will be deemed necessary and proper. *Id.* at 729., citing In re McShane, 235 F.Supp. 262, 274 (N.D. Miss. 1964).  The Court finds here, that the circumstances in this case would lead a law enforcement officer to expedite his efforts to catch up to the subject and his fellow officers, in an unfamiliar and dark local, with compromised radio communications and a lack of visual conformation of the whereabouts of the subject, and  where providing law enforcement back up in this surveillance scenario was clearly exigent. To find otherwise,would send a chilling message to law enforcement and the community, that variance from procedures and policies or variance from traffic controls should inhibit law enforcement in the discharge of their duty to protect the public in emergent of exigent situations..

Similarly it does not appear that it can be argued that the Defendant was acting with malice or criminal intent. The Prosecution does not argue this point in their response to the Defendant's motion to dismiss. In fact, the charges specifically allege that the accident occurred without malice. *People's Compl.* 1-3. There is no reason to believe that the Defendant meant to hit the van, especially since the

accident injured him as well. Based upon the foregoing, the Court finds that the Defendant meets the necessary and proper standard.

### III. *Similarity or Lack Thereof to Cases Where Immunity Was Denied*

There are only a handful of cases in the United States in which federal courts have denied Supremacy Clause immunity to a federal officer who faced state criminal prosecution. *Idaho v. Horiuchi,* 253 F.3d 359, 387 (9th Cir.) (en banc) (Hawkins, dissenting), vacated as moot, 266 F.3d 979 (9th Cir. 2001).

In the first case an Army officer and an enlisted man were charged with stopping the theft of copper from a military base. *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 2 (1906). While on patrol they found a group of young men standing in the street. *Id.* at 3. When the boys saw them they ran and the enlisted man shot at one of the boys, killing him. *Id.* at 3. The soldier maintained that he shot the boy to prevent him from escaping, but witnesses reported that the boy had surrendered and begged the soldier not to shoot him, but they shot him anyway. *Id.* at 4. The court found that the conflict in testimony suggested that the officers might have acted with criminal intent. *Id.* at 8. The court held that the denial of the immunity defense by the District Court was proper. *Id.* at 8.

In the second case federal officers shot and killed a man they suspected of illegally transporting whiskey. *Castle v. Lewis*, 254 F. 917, 919 (8th Cir. 1918). The court noted that there was conflict in the evidence as to what happened. *Id.* at 926. The officers contended that when the suspect ran from them refusing to stop and submit to arrest, they shot him. *Id.* The men in the car with the suspect claimed that they were given no warning and were fired upon while driving past the officers. *Id.* at 23. Once again the conflict in testimony suggested that the officers might have acted with criminal intent, making them ineligible for the Supremacy Clause immunity defense.

Unlike the two cases above, there has not been any evidence or argument that the Defendant in the present case acted with any criminal intent, and facts of the case are not in dispute, the Court finds that the Defendant did not act with criminal intent.

In a third case, federal game wardens shot and killed two hunters. *Birsch v. Tumbleson*, 31 F.2d 811, 812 (4th Cir. 1929). There was once again some discrepancy between the testimony. The wardens claimed that the hunters shot first, while the witnesses claimed that the wardens shot at the hunters for

no reason. *Id.* Once again the court denied Supremacy Clause immunity defense because of the question of fact regarding the criminal intent of the federal wardens.

In a fourth case, two DEA agents, who were intoxicated at the time, backed into another man's car. *Morgan v. California*, 743 F.2d 728, 729 (9th Cir. 1984). They then followed the man to a jewelry store and assaulted him and his wife. *Id.* at 730. The court concluded that the District Court was correct when it denied the agents the use of the Supremacy Clause defense, because it was disputed as to whether the agents were engaged in official business when they assaulted the man and his wife. *Id.* at 734.

The fifth case involved an FBI sniper who shot and killed an unarmed woman as she held the door open for her fleeing husband. *Idaho v. Horiuchi*, 253 F.3d 359, 363 (9th Cir.) (en banc), vacated as moot, 266 F.3d 979 (9th Cir. 2001). The Ninth Circuit held that where the facts supporting the immunity claim are in dispute the Court will not grant a federal agent's motion to dismiss pursuant to the Supremacy Clause immunity. *Id.* at 367. The Court strongly suggested that the FBI sniper was not being truthful about the facts of the shooting. *Id.* at 368. The Court suggested that the sniper had already decided to shoot the suspects whether or not they were a threat. *Id.* at 370. Since there was a dispute as to whether there was malice or criminal intent the court remanded the case back to the district court to determine the facts. *Id.* at 377.

In the present case there are no disputed issues of fact which would tend to show malice or criminal intent. Both parties agree that the Defendant was speeding and ran a stop sign when he collided into the van. The present case is unlike any of the cases where the courts ruled that immunity could be denied.

*IV. On Duty Traffic Accidents Involving Federal Employees*

In a Fourth Circuit case, a marine was driving in a convoy when he ran a red light and crashed into a civilian's vehicle. *North Carolina v. Cisneros*, 947 F.2d 1135, 1137 (4th Cir. 1991). The marine claimed that since he was driving as an on-duty marine he was protected by the Supremacy Clause immunity. *Id.* at 1138. The Fourth Circuit held that the simple fact that he was on-duty and he believed he could navigate the intersection safely was not enough. *Id.* at 1139. The court held that to establish a federal immunity defense for an on-duty vehicular traffic accident, "the federal officer must show that

the accident resulted from an exigency or emergency related to his federal duties which dictated or constrained the way in which he was required to, or could, carry out those duties." *Id.* at 1139. The court gave examples of facts that would support a finding of exigency or emergency, including exceeding the speed limit in order to capture a fleeing felon, or to execute a raid. *Id.* at 1139.

Similarly, the simple fact that the Defendant in the present case was on-duty and he thought he could navigate the stop sign safely, do not by themselves allow for the use of the Supremacy Clause immunity defense according to the Fourth Circuit. The Defendant would have to show that the crash resulted from an exigency or emergency related to his federal duties. In the present case, the Defendant argues that he was speeding in order to catch up with a suspect he was following in anticipation of assisting the other agents in his arrest. The Fourth Circuit's examples of facts that would support an immunity defense included exceeding the speed limit in order to capture the fleeing felon, or to execute a raid. *Id.* at1139. In the instant case, the Defendant was speeding to follow a suspected felon and execute an arrest of one suspect and possibly more, depending on where the suspect stopped. The Defendant's actions would likely be considered an exigency and/or emergency related to his federal duties by the Fourth Circuit.

In an earlier Fourth Circuit case, very similar to the case above, a marine was driving in a convoy when he collided with a civilian's vehicle killing him. *State v. Ivory*, 906 F.2d 999 (4th Cir. 1990). The Fourth Circuit did not reach a finding on the merits of the Supremacy Clause Immunity issue, and instead found that the removal to federal court was improper, and hinted that the defendant's mere presence in the military convoy did not automatically give rise to a claim of immunity. *Id.* at 1003. The Fourth Circuit also argued that the defendant was subject to local traffic laws unless his federal responsibilities justified his violation of those laws. *Id.* at 1002. Since the defendant gave no reason why driving in a convoy would justify a violation of these laws the court hinted that he could not use the Supremacy Clause immunity defense. *Id.* at 1002. The court ended their opinion by stating that "had there been any exigency stemming from the duties of military service or federal employment, this would, we repeat, have been a different case." *Id.* at 1003.

As discussed above the Defendant argues that he was speeding in order to catch up with a suspect he was following in anticipation of assisting other agents in his arrest. Based upon the foregoing

the Court finds that the Defendant's actions constituted an exigency and/or emergency which dictated or constrained the way in which Defendant was required to, or could, carry out these duties. *North Carolina v. Cisneros*, 947 F.2d 1135, 1139 (4th Cir. 1991).

### *Conclusion*

Based on the foregoing, the court finds that Defendant's actions were within the scope of authority and were necessary and proper, and there is no dispute of fact. For the reasons the reasons set forth above, the Court hereby GRANT Defendant's motion to dismiss the charges based on supremacy clause immunity.

IT IS SO ORDERED.

DATED: May 24, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge